UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 SEP 29 A 11: 20
U.S. DISTRICT COURT
DISTRICT OF MASS.

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MICHAEL K.C. TOM, DAVID TOM, SHENGNAN WANG, HAI LIU, and GLOBAL TIME CAPITAL MANAGEMENT, LLC,

Defendants,

and

GTC GROWTH FUND, L.P.,

Relief Defendant.

MAGISTRATE JUDGE Dein

Civil Action No. 05 11966 NMG

**Jury Trial Demanded**

RECEIPT #
AMOUNT $ N/A
SUMMONS ISSUED Yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. Tom
DATE 9/29/05

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY

1. This matter concerns insider trading in the securities of Charter One Financial, Inc. ("Charter One"). On May 4, 2004, just after the market closed, Citizens Financial Group, Inc. ("Citizens"), a subsidiary of the Royal Bank of Scotland Group, PLC, announced that it planned to acquire Charter One in a cash transaction for $44.50 per share. Charter One stock closed at $43.86 per share on May 5, 2004, the first trading day after the announcement, a rise of $7.91 per share, or over 22%, from the close the previous day.

2. In late April and early May 2004, Defendant Shengnan Wang ("Wang"), an employee of Citizens, learned that Citizens was performing due diligence for the acquisition of a

bank located in Cleveland, Ohio, which turned out to be Charter One. Wang then conveyed certain material, non-public information relating to Citizens' planned acquisition to her husband, Defendant Hai Liu ("Hai Liu" or "Hai"), and Defendant Michael K. C. Tom ("Michael Tom"), a former employee of Citizens and the manager of a hedge fund in which Wang and her husband had invested approximately $60,000.

3. While in possession of this inside information and prior to the public announcement of Citizens' planned acquisition of Charter One, Michael Tom purchased numerous Charter One call options for his personal account and for his hedge fund, GTC Growth Fund, L.P. ("GTC Growth Fund"), the fund in which Wang and her husband Hai Liu had an investment. Michael Tom manages the GTC Growth Fund through his investment adviser entity, Defendant Global Time Capital Management, LLC ("GTCM"), and Michael Tom purchased the Charter One call options for the GTC Growth Fund through this investment adviser entity. Michael Tom also traded Charter One securities in a joint account he held with his wife and in accounts he managed for his wife and in-laws while in possession of material, non-public information and prior to the public announcement of the planned Charter One acquisition. Michael Tom's trading in Charter One securities resulted in total imputed profits of approximately $743,505.

4. Michael Tom and Hai Liu, in turn, tipped their brothers, Defendant David Tom ("David Tom" or "David") and Zheng Liu ("Zheng Liu" or "Zheng"), respectively, to the material, non-public information that Wang had given them. David Tom and Zheng Liu both traded Charter One securities on the basis of material, non-public information. David Tom's

illegal insider trading resulted in imputed profits of approximately $39,089, while Wang's brother-in-law, Zheng Liu, made imputed profits of approximately $2,736.

5. By virtue of the conduct alleged in this Complaint, Defendants Michael Tom, David Tom, Wang, Hai Liu, and GTCM violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. Accordingly, the Commission seeks: (i) entry of permanent injunctions prohibiting each of Michael Tom, David Tom, Wang, Hai Liu, and GTCM from further violations of Section 10(b) and Rule 10b-5 thereunder; (ii) disgorgement of the profits from each defendant's insider trading, plus pre-judgment interest; and (iii) the imposition of civil monetary penalties of up to three times the profits from each defendant's insider trading.

6. Relief Defendant GTC Growth Fund is a limited partnership that operates as a hedge fund. Michael Tom, acting through GTCM, is the portfolio manager for the GTC Growth Fund. In that role, Michael Tom engaged in illegal insider trading in Charter One securities that resulted in the GTC Growth Fund receiving approximately $199,630 in imputed profits that constituted unjust enrichment and/or ill-gotten gains. Accordingly, the Commission seeks an order requiring the GTC Growth Fund to disgorge all unjust enrichment and/or ill-gotten gains received by the GTC Growth Fund from illegal trades made or directed by Michael Tom or GTCM, plus prejudgment interest thereon.

## JURISDICTION

7. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A(a) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1(a) and 78aa]. Many of the acts and practices complained of herein occurred within the District of Massachusetts.

8. The Commission brings this action pursuant to the authority conferred upon it by Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1].

9. In connection with the conduct described in this Complaint, each defendant directly and indirectly made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of national securities exchanges.

## DEFENDANTS

10. **Shengnan Wang,** age 28, resides in Natick, Massachusetts. Wang is a citizen of the People's Republic of China. Wang worked as an analyst in Citizens' Credit Portfolio Management Group in Boston, Massachusetts, from November 2003 to August 2005. Wang is Defendant Hai Liu's wife.

11. **Hai Liu,** age 31, resides in Natick, Massachusetts. Hai Liu is a citizen of the People's Republic of China and currently holds an H-1B work visa. He is employed as a software engineer at a telecommunications company. Hai Liu is Wang's husband.

12. **Michael K.C. Tom,** age 36, resides in Waltham, Massachusetts. He manages a hedge fund called GTC Growth Fund. From April 2001 until December 2003, he worked for Citizens as a risk reporting analyst in the Credit Portfolio Management Group in Boston. Michael Tom and Wang worked together in the Credit Portfolio Management Group for approximately one month before he left Citizens. Michael Tom is Defendant David Tom's brother.

13. **GTCM** is a Delaware limited liability company based in Burlington, Massachusetts. GTCM is the general partner of GTC Growth Fund, a hedge fund with

approximately $1.9 million in assets. GTCM is responsible for managing GTC Growth Fund's assets. GTCM is owned by Michael Tom and two partners.

14. **David Tom,** age 34, resides in Denver, Colorado. David Tom is employed as a software engineer at an information management company and is Michael Tom's brother.

## RELIEF DEFENDANT

15. **GTC Growth Fund, L.P.** is a Delaware limited partnership based in Burlington, Massachusetts, that is operated as a hedge fund. GTCM is the general partner for GTC Growth Fund, and it has approximately nine limited partners, including Wang and Hai Liu. Michael Tom is the portfolio manager for the GTC Growth Fund and was responsible for all trades relevant to this matter.

## RELATED PARTIES

16. **Charter One Financial, Inc.** was a publicly-traded bank holding company headquartered in Cleveland, Ohio. During the relevant time period, Charter One's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the New York Stock Exchange under the symbol "CF." Its options were traded primarily on the American Stock Exchange. Charter One was acquired by Citizens Financial Group, Inc. on August 31, 2004.

17. **Citizens Financial Group, Inc.** is a commercial bank holding company headquartered in Providence, Rhode Island. Citizens is owned by the Royal Bank of Scotland Group, PLC, a financial holding company based in Edinburgh, Scotland. The Royal Bank of Scotland's securities are registered with the Commission pursuant to Section 12(b) of the Exchange Act, and its American Depository Receipts trade on the New York Stock Exchange.

18. **Zheng Liu**, age 33, is a resident of San Ramon, California. He is the brother of Hai Liu and the brother-in-law of Shengnan Wang.

## BACKGROUND

19. Beginning in or about April 2001 through in or about December 2003, Michael Tom worked at Citizens' Credit Portfolio Management Group ("Credit Portfolio Group" or the "Group") in Boston, Massachusetts. Michael Tom left Citizens to manage his own hedge fund.

20. In or about November 2003, Citizens hired Wang as an analyst in the Credit Portfolio Group. Michael Tom helped Wang, whom he knew through a mutual acquaintance, obtain her job with Citizens. Michael Tom and Wang worked together in the Credit Portfolio Management Group for approximately one month before he left Citizens in December 2003.

21. In or about late February 2004, Wang and her husband, Hai Liu, invested approximately $60,000 in Michael Tom's hedge fund, GTC Growth Fund.

22. The Credit Management Group of Citizens, where Wang was employed, participated as a member of Citizens' due diligence team for potential acquisitions. During her entire period of employment with Citzens, Wang was a corporate insider who was prohibited from trading and from tipping others to trade stock while in possession of material, nonpublic information about Citizens acquisitions. Wang was aware that she had a duty to keep material, nonpublic information confidential.

23. In or about early to mid-April 2004, the head of the Credit Portfolio Group had a series of informal discussions over the course of several weeks with Group members regarding the Group's responsibilities should a due diligence exercise of any size arise related to a potential acquisition or merger. The Group's head had several discussions with Wang in particular,

concerning responsibilities that she would have in the due diligence process. He specifically showed her how to pull "screen shots" displaying financial information on public companies from a Bloomberg machine. He discussed with Wang that the work would typically occur on short notice and over a weekend.

24. On or about April 23, 2004, the head of the Credit Portfolio Group and others from the consumer and residential mortgage areas at Citizens met at Citizens' headquarters in Providence, Rhode Island to discuss strategies and plan how Citizens would approach a due diligence exercise concerning a possible acquisition of another bank. Charter One was identified at the meeting as the target.

**On Wednesday, April 28, 2004, Certain Members of the Credit Portfolio Group Are Notified about the Acquisition Target, and Wang Seeks to Find out the Target's Identity**

25. On or about Wednesday, April 28, 2004, the head of the Credit Portfolio Group learned that the due diligence and possible acquisition of Charter One was proceeding. He quickly lined up three other members of the Credit Portfolio Group to accompany him to perform due diligence in Cleveland, Ohio, where Charter One was based. Wang was not one of them.

26. Sometime early that afternoon, the Group head spoke to Wang. He told her that he needed three members of the Group to be in Citizens' office in Boston during the weekend to run analyses and that she would be in charge. Although the project related to the Charter One due diligence, the information provided to the analysts staying in Boston concerned bank customers and did not mention Charter One. Wang was not informed where the members of the Group were going or the identity of any merger or acquisition target.

27. That same afternoon, Wang saw a piece of paper on a colleague's desk with times written on it. Wang believed them to be flight departure times for her colleague, who she suspected was leaving for a few days to work on the project related to a merger. Wang believed that Cleveland was the destination because she had heard earlier rumors about Key Bank, a Cleveland-based bank, being a possible acquisition target.

28. That evening, Wednesday, April 28, 2004, at her home, Wang went online to a travel Web site to look for flights from Boston to Cleveland in an effort to match flight times to the times she saw on her colleague's desk. A list of flights came up on the Web site and at least one flight approximately matched a time written on the piece of paper that she suspected was her colleague's departure times. Wang also looked up the FDIC Web site to see what banks were based in Cleveland. Wang saw that National City and Charter One, in addition to Key Bank, were banks based in Cleveland.

29. During the same day, Wednesday, April 28, 2004, Wang's husband, Hai Liu, called his brother Zheng Liu, at least three times, at 3:58 p.m., 5:47 p.m., and 9:54 p.m. (all times Eastern Daylight Time ("EDT")). During one of the calls, Hai Liu told his brother that he should look at buying stock in Key Bank and National City. The next day, Thursday, April 29, 2004, Zheng purchased 100 shares of National City stock and 100 shares of Key Bank stock. Zheng also purchased an additional 100 shares of National City stock and an additional 200 shares of Key Bank stock on Friday, April 30, 2004.

**On Thursday, April 29, 2004, Wang Learns**
**Additional Information and Tips Michael Tom**

30. On or about Thursday morning, April 29, 2004, the head of the Credit Portfolio Group called Wang at her Citizens' direct phone line at or about 10:47 a.m. EDT. The telephone number, which originated from the Sheraton Cleveland Airport Hotel, came up on Wang's caller ID screen. Wang then conducted an area code search on her office computer at or about 11:21 a.m. EDT and searched a reverse phone directory at or about 11:22 a.m. EDT.

31. Just a short time later, at or about 11:36 a.m. EDT, Wang called Michael Tom. The call lasted approximately ten minutes. In breach of her duty to keep material, nonpublic information confidential, Wang told Michael Tom the information that she had learned concerning Citizens' plan to acquire a Cleveland, Ohio-based bank.

32. Michael Tom knew that Wang worked at Citizens and knew, or was reckless in not knowing, that Wang was providing confidential information to him in breach of Wang's duty to Citizens.

33. At or about 11:55 a.m. EDT, Michael Tom emailed his brother, David Tom. Michael Tom wrote the following:

> I am speculating that Citizens will be buying some bank in Cleveland OH [sic]. My guess is its [sic] either Key Corp or NCC [National City] or CF [Charter One] in that order of likelihood. I will be buying the options May and June to take advantage of that.

34. At or about 12:03 p.m. EDT, David Tom responded to Michael Tom with an email that read: "Is this pure speculation or is there some substance behind it?"

35. At or about 12:39 p.m. EDT, Michael Tom responded to his brother's email with the following email:

> This is legit as it can be. I know the fact is true. I just don't know which one its [sic] going to be.

36. David Tom knew that Michael Tom was a former Citizens employee and knew, or was reckless in not knowing, that the information Michael Tom provided to him was confidential and/or improperly obtained.

37. Between 12:05 p.m. EDT and the close of the market on Thursday, April 29, 2004, Michael Tom purchased securities in Key Bank, National City, and Charter One securities for his own account, the GTC Growth Fund account, the account for his father-in-law and mother-in-law, and a joint account with his wife.

38. In his personal account, Michael Tom purchased 180 call options contracts in Key Bank, 145 call options contracts in National City, and 90 May and June call options contracts in Charter One on April 29, 2004. The strike price for all of Michael Tom's Charter One call options trades during the relevant time period was $35 per share.

39. In the GTC Growth Fund account, Michael Tom purchased 70 call options contracts in Key Bank, 20 call options contracts in National City, and 40 June call options contracts in Charter One on April 29, 2004.

40. In his in-laws' account, Michael Tom purchased 20 call options contracts in Key Bank and 20 June call options contracts in Charter One on April 29, 2004.

41. In the joint account with his wife, Michael Tom purchased 95 call options contracts in Key Bank on April 29, 2004.

**On Friday, April 30, 2004, Michael Tom Begins**
**to Focus Solely on Charter One in His Trading**

42. On Friday, April 30, 2004, Michael Tom continued to purchase securities in Charter One, Key Bank, and National City. Between approximately 9:39 a.m. and 9:53 a.m. EDT, Michael Tom purchased 50 call options contracts in Key Bank and 20 August call options contracts in Charter One and 20 call options contracts in National City for his personal account. By early afternoon, Michael Tom began to focus solely on purchasing Charter One securities. At or about 1:50 p.m. EDT, Michael Tom purchased his last options contract in Key Bank. This was the last time Michael Tom purchased Key Bank or National City securities during the relevant time period. Between approximately 2:14 p.m. and 2:52 p.m. EDT, Michael Tom purchased 80 May and June Charter One call options contracts for his own account and 50 June call options contracts for the GTC Growth Fund account. Finally, between approximately 3:56 p.m. and 4:00 p.m. EDT, Michael Tom purchased 150 Charter One May call options.

43. Throughout that day, Friday, April 30, 2004, Michael Tom and Wang had several communications concerning Citizens and its acquisition target. Sometime in the afternoon, Wang heard from a colleague that the Citizens acquisition target may be Charter One.

44. During a telephone call at or about 6:14 EDT that same day, Hai Liu, Wang's husband, told his brother, Zheng Liu, that Charter One was the acquisition target.

**On Monday, May 3, 2004, the Parties Continue**
**to Communicate and to Buy Charter One Securities**

45. On Monday, May 3, 2004, Hai Liu, Wang's husband, called his brother Zheng Liu at least four times. In one of the calls, Hai Liu once again told Zheng Liu that Charter One was

an acquisition target and urged him to trade in Charter One securities. Later that day, Zheng purchased 300 shares of Charter One stock.

46. Also on Monday, May 3, 2004, Wang and Michael Tom continued to have communications about Citizens and its acquisition target. Wang called Michael Tom at home and at work at or about 8:26 a.m. EDT, but does not appear to have spoken to him. She also called Michael Tom at or about 9:41 a.m. EDT, this time staying on the phone for approximately 8 minutes.

47. Michael Tom also continued to focus solely on buying Charter One call options and stock in his trading.

48. In his personal account, Michael Tom purchased 130 June and August call options contracts and1000 shares of common stock in Charter One on May 3, 2004.

49. In the GTC Growth Fund account, Michael Tom purchased 160 May and August call options contracts in Charter One on May 3, 2004.

50. In his wife's account, Michael Tom purchased 1,100 shares of common stock in Charter One on May 3, 2004. He also purchased 12 May Charter One call options contracts for his joint account with his wife and 20 August call options contracts in his in-laws' account on May 3, 2004.

51. Michael Tom also sold 50 Key Bank call options at or about 10:57 a.m EDT on May 3, 2004.

52. David Tom, Michael Tom's brother, traded in the securities of one of the banks mentioned in Michael Tom's April 29, 2004 email for the first time on Monday, May 3, 2004. David Tom had telephone conversations with Michael Tom on Saturday, May 1, 2004 and

Monday, May 3, 2004 concerning Citizens and its acquisition target. David purchased 50 Charter One May call options on May 3, 2004. At the time of his trades, David Tom was aware that his brother, Michael Tom, had worked as a credit analyst at Citizens, and knew, or was reckless in not knowing, that the information Michael Tom provided to him was confidential and/or improperly obtained.

**On Tuesday, May 4, 2004, Citizens Announces after the**
**Close of the Market that It Would be Acquiring Charter One**

53. On Tuesday, May 4, 2004, Michael Tom continued to purchase Charter One call options: 160 May call options contracts for his personal account and 20 August call options contracts for the GTC Growth Fund account. Michael Tom also sold 65 National City call options at approximately 12:00 p.m. EDT.

54. At or about 1:45 p.m. EDT on May 4, 2004, Hai Liu sent an email to his brother Zheng that stated: "BTW [By the way], the news will be out tomorrow noontime, you can put [sic] more." Zheng interpreted his brother's email to refer back to their earlier communications concerning Charter One being an acquisition target, and that his brother was urging him to buy more securities before the acquisition announcement came out. Zheng, however, did not purchase any more bank securities.

55. After the close of the market on May 4, 2004, Citizens announced that it planned to acquire Charter One in a cash transaction for $44.50 per share. Charter One stock had closed at $35.95 per share that day (May 4), and closed at $43.86 per share on May 5, 2004, the first trading day after the announcement, a rise of $7.91 per share, or over 22%.

56. As a result of his illegal insider trading in Charter One securities between April 29, 2004 and May 4, 2004, Michael Tom made a total of approximately $743,505 in the accounts for which he controlled the trading in Charter One securities. Of that amount, approximately $199,630 represented the imputed profits generated by Michael Tom's trading for GTCM, which unjustly benefitted the GTC Growth Fund. David Tom made approximately $39,089 as a result of his trading in Charter One options during this period. Zheng Liu made approximately $2,736 as a result of his illegal insider trading in Charter One stock during this period.

**After the Announcement, Hai Liu Tells His Brother that Wang, His Wife, Tipped a Friend or Friends About Charter One**

57. After the Citizens announcement, Zheng Liu had a number of communications with his brother, Hai Liu, who is Wang's husband. During one of the conversations, in or about August or September 2004, Hai Liu told Zheng Liu that Wang had tipped a friend or friends about the Charter One acquisition.

58. Hai Liu also told his brother Zheng Liu to delete his emails concerning the Charter One matter.

**Defendants' Breach of Duties**

59. Beginning in November 2003 when Wang was hired by Citizens and continuing through the public announcement on May 4, 2004 that Citizens was acquiring Charter One, Wang had a duty to her employer, Citizens, to maintain the confidentiality of the information she learned about Charter One and other Cleveland-based banks. Wang was aware of this duty and breached it by providing confidential information to Michael Tom and/or GTCM, who were aware of the information when they traded in Charter One securities.

60. Having received material, nonpublic information from his wife Wang about Citizens and its plan to acquire a Cleveland, Ohio bank, Hai Liu had a duty of trust and confidence to his wife. Hai Liu breached that duty by providing such material, nonpublic information to his brother, Zheng Liu, who was aware of the information when he traded in Charter One securities.

61. Michael Tom, David Tom, and GTCM each had a derivative duty not to trade Charter One securities on the basis of material, nonpublic information that they knew or were reckless in not knowing was improperly obtained. Each of those defendants breached their duties when they traded in Charter One securities on the basis of material, nonpublic information that they knew or were reckless in not knowing was improperly obtained.

**<u>FIRST CLAIM FOR RELIEF</u>**
**(Insider Trading in Violation of Exchange Act § 10(b) and Rule 10b-5 thereunder)**

62. The allegations set forth in Paragraphs 1-61 above are hereby realleged and incorporated by reference herein.

63. By reason of the foregoing, each of the Defendants, directly or indirectly, acting intentionally, knowingly, or recklessly, by use of the means or instrumentalities of interstate commerce, or of the mails, or any facility of any national securities exchange, in connection with the purchase or sale of securities: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, acts, practices or courses of business which operated as a fraud or deceit upon any persons, including purchasers or sellers of Charter One's securities

in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment of Relief Defendant GTC Growth Fund)**

64. The allegations set forth in Paragraphs 1-63 above are hereby realleged and incorporated by reference herein.

65. GTC Growth Fund has no legitimate interest in, or right to, the funds obtained as a result of illegal trading in the securities of Charter One by Michael Tom and/or GTCM, which are currently being held by it, and therefore, in equity and good conscience, it should not be allowed to retain such funds.

66. As a result, GTC Growth Fund is liable for unjust enrichment and should be required to return its unjust enrichment, with pre-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that the Court issue a final judgment:

A. Permanently enjoining each of Michael Tom, David Tom, GTCM, Shengnan Wang, and Hai Liu, and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from engaging, directly or indirectly, in violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

B. Ordering each of Michael Tom, GTCM, and David Tom to disgorge all ill-gotten gains received from illegal trades made or directed by them, plus prejudgment interest thereon;

C. Ordering Hai Liu to disgorge all ill-gotten gains received from illegal trades made or directed by Zheng Liu, plus prejudgment interest thereon;

D. Ordering Michael Tom and David Tom, jointly and severally, to disgorge all ill-gotten gains received from illegal trades made or directed by David Tom, plus prejudgment interest thereon;

E. Ordering Shengnan Wang, Michael Tom, and GTCM, jointly and severally, to disgorge all ill-gotten gains received from illegal trades made or directed by Michael Tom and GTCM, plus prejudgment interest thereon;

F. Ordering Relief Defendant GTC Growth Fund to disgorge all unjust enrichment and/or ill-gotten gains received by GTC Growth Fund from illegal trades made or directed by Michael Tom or GTCM, plus prejudgment interest thereon;

G. Ordering each of Michael Tom, GTCM, David Tom, Shengnan Wang, and Hai Liu to pay an appropriate civil monetary penalty pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1]; and

H. Awarding such other and further relief as the Court deems just and proper.

Dated: September 29, 2005

Respectfully submitted,

By: ______________________

Steven Y. Quintero (Mass. Bar No. 632079)
Deborah Levine (Mass Bar No. 547998)
ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8900
(617) 573-8984 (Quintero)
(617) 424-5940 (facsimile)
quinteros@sec.gov (email)